TERRY et al. v. TEXAS CO. (No. 9406.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 4, 1920. Rehearing Denied Jan. 22, 1921.)

Mines and minerals ⬁78(1)—Lessee, by placing timber and machinery on land, held to "commence to drill" well; "commence."

Lessee, by placing timbers for erection of derrick and machinery, including boiler, on the ground where oil well was to be drilled, complied with provision requiring him to "commence to drill" well within certain period; the word "commence" being defined as "to perform the first act of."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Commence.]

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Action by B. F. Terry and others against the Texas Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Sayles & Sayles, of Abilene, for appellants.
A. B. Flanary, of Dallas, and T. J. Lawhon, of Houston, for appellee.

BUCK, J. This is an appeal from a judgment of the district court of Eastland county for the defendant, the Texas Company, denying plaintiffs, B. F. Terry, J. M. Radford, and Mac. Sayles, a cancellation of two certain oil and gas leases on land in Eastland county. The lease contained the following provision:

"This is not to have any validity or effect, unless lessee or his assigns commence to drill a test well for oil within eight (8) months from this date within a radius of two (2) miles of Rising Star, Texas."

The lease was dated March 6, 1918. It was alleged in plaintiffs' petition that defendant had failed to commence to drill a test well for oil within the prescribed limits prior to eight months after the date of the leases, and that therefore they were entitled to a cancellation of the leases.

The plaintiff Terry testified: That the test well was on the H. O. Hagan tract, and that the timbers for the erection of the derrick were put on the ground some time in October, 1918, and that he thought it was the first part of October. That the defendant thereafter put the machinery, including the boiler, on the ground. There is no evidence tending to show that the defendant failed to prosecute the work of preparing to drill and of drilling with due diligence after it began. The log of the well shows that the defendant commenced rigging up for the well November 5th, and commenced drilling November 14, 1918.

In Thornton's Law Relating to Oil and Gas, p. 165, § 115, a quotation from the case of Fleming Oil & Gas Co. v. South Penn. Oil Co., 37 W. Va. 645, 17. S. E. 203, is given with approval, which reads as follows:

"Can it be said that, in order to commence operations for a test well, the drill must actually begin to penetrate the rock? I do not so understand the meaning of the expression construed in connection with the facts presented by the record. In many places, in order to sink a well, it is necessary that some sort of wooden or metallic casing be provided for the purpose of excluding the soil and clay which must be passed through before the rock is reached; and it would hardly be contended that the purchase and provision of the necessary material for such casing or cribbing was not an important step towards putting down the well. Webster defines the word 'operation' as 'an effect brought about in accordance with a definite plan'; and, in giving the interpretation ordinarily ascribed to the words 'to commence operations'—that is, applying to the words their common acceptation—I would understand the expression to mean the performance of some act which has a tendency to produce an intended result. For instance, if a man had determined to erect a brick house, and, in pursuance of that design, had quarried the rock on his own land to be used in the cellar walls and foundation, and had burned a kiln of brick on the same premises, for the purpose of constructing the walls and chimneys, it surely could not be said that he had not 'commenced operations' for the construction of his house, although the roads might then be in such a condition as to prevent him from hauling the stone and brick to the place he had selected for its location. Another familiar instance that may serve the purpose of illustration is the erection of locks and dams for the purpose of improving navigation by increasing the depth of water. * * * When the location of the lock has been selected, and stone has been quarried and prepared, although it has not been hauled to the location, and no excavations have been made to receive it, we would not be warranted in saying that operations had not been commenced for the construction of the lock. And, again, where a building has been destroyed by fire, how frequently do we hear it remarked that the owner commenced operations at once for the construction of another by clearing away the débris, and contracting for the material with which to rebuild the structure? The terms of the covenant contained in said lease must be considered as having been complied with, no matter how slight may have been the commencement of any portion of the work which was a necessary and indispensable part of the work required in putting down the test well."

In the case of McCallister v. Texas Co., 223 S. W. 859, where the lessee selected the location for an oil well, and hauled derrick timbers to the site, and provided a water supply for drilling purposes, it was held by this court that such actions constituted a "beginning of operations for the drilling of an oil well," within the terms of the lease requiring such operations to begin within a certain time. One of the definitions given in the dictionary of the word "commence" is "to perform the first act of.". Certainly it was necessary, before actually piercing the ground with the drill, to place the timbers and boiler and other machinery on the ground and to erect the derrick.

From the authority quoted, and others which might be cited, we conclude that the evidence, fairly interpreted, shows that the appellee did "commence to drill" the test well within the time specified, to wit, prior to November 6, 1918. This conclusion renders it unnecessary to notice other assignments of appellant, complaining of certain evidence alleged to have been erroneously introduced. The judgment for the defendant was on a verdict in response to peremptory instructions, and we believe the court was authorized to peremptorily instruct the jury to find for the defendant, because the uncontradicted testimony of one of the plaintiffs establishes the compliance on the part of the defendant of the clause in the. lease which the plaintiffs asserted had been breached.

Judgment affirmed.

### On Motion for Rehearing.

In Fast v. Whitney, 26 Wyo. 433, 187 Pac. 192, there is found a full, comprehensive discussion of the question here involved. There the court says:

"As we understand these cases, none of them declares, as a matter of law, that there is a distinction between commencing a well, or the drilling of a well, and commencing operations for drilling, with respect to the acts necessary or sufficient to constitute a commencement of the work, or that there is such a distinction in fact."

In this opinion is mentioned the Texas case of Forney v. Ward, 25 Tex. Civ. App. 443, 62 S. W. 108, relied on by appellants. In the latter case, the Galveston Court of Civil Appeals, in affirming a judgment of the trial court, held that the hauling of a load of lumber out on the land under lease to be used in erecting a derrick, on the last day of the life of the lease, was not alone sufficient to save the lease from forfeiture. With no purpose to criticize that decision, and without attempting to show the difference in the facts between that case and this, which is apparent, we are still of the opinion that the facts in this case do show, as a matter of law, that there was a "commencing to drill" on the land in question during the life of the lease.

Motion for rehearing is overruled.