**GULEKE et al. v. HUMBLE OIL & RE-FINING CO. et al.**

**No. 4993.**

Court of Civil Appeals of Texas. Amarillo.

Feb. 27, 1939.

Rehearing Denied March 20, 1939.

the land and appellee Phillips Petroleum Company, by assignment from the original lessee, became the owner of the oil and gas lease subject to an over-riding royalty of one-thirty-second of any oil or gas that may be produced. The lease was dated November 4, 1926, and provided for a primary term of ten years with the usual provisions for the payment of rentals annually of $320 for the privilege of deferring drilling operations after the first year. It contained a provision substantially to the effect that if, at the expiration of the primary term, oil or gas was not being produced but the lessee was then engaged in drilling or re-working operations on the land, the lease should remain in force so long as such operations were prosecuted with no cessation of more than thirty days and, if they resulted in the production of oil or gas, so long thereafter as oil or gas should be produced from the land.

Appellants alleged that no oil or gas was produced from the premises within the primary term and that no drilling operations for the discovery of oil or gas were begun until after the expiration of the primary term of the lease. They further alleged that the well that was drilled and such operations . as were performed under the lease were performed with the intention only of prospecting for and developing production of gas instead of oil, contending that the failure of appellee to begin drilling of the well within the contract period and its failure in good faith to prospect for and make reasonable efforts to produce oil, together with other acts and omissions not necessary here to mention, rendered the lease null and void and by virtue thereof it had expired and terminated by its own terms. They prayed that the cloud cast upon their title by the existence and registration of the lease be removed; that all apparent interest and claim of appellees be divested and for general relief.

Ben H. Stone and R. A. Stone, both of Amarillo, for appellants.

E. H. Foster, Warren M. Sparks, and H. H. Cooper, all of Amarillo, for appellees.

STOKES, Justice.

This suit was filed by appellants to cancel an oil and gas lease held by appellee Phillips Petroleum Company on a half section of land owned by appellants and located in Moore County. The lease was executed by appellants' grantors, J. A. Box and wife, Laura E. Box, to Humble Oil and Refining Company. After the lease was executed appellants purchased the case was tried by the court without the intervention of a jury and at the close of appellants' testimony, and in response to the suggestion and motion of appellees that appellants' evidence had not made out a case that would warrant the relief for which they prayed, judgment was entered in favor of appellees, who were defendants in the trial court. No testimony was offered by appellees but their motion for judgment was granted and judgment accordingly entered in their

favor to which appellants duly excepted and from which they gave notice of appeal.

The case is presented in this court upon a number of assignments of error and propositions, the principal contentions being; first, that the lease terminated by virtue of the failure of appellee Phillips Petroleum Company promptly to market and utilize the gas that was produced from the well and in good faith to develop the leased premises for oil; and, secondly, that, no oil or gas having been produced during the primary term of the lease and no actual drilling having been done until after the expiration of that term, the lease terminated by its own terms.

■ The first of these contentions · is based upon the allegation and proof that no· gas was actually placed upon the market until some three months after the well was completed and no reason or excuse given for the delay, and further, that the well was drilled primarily as an effort to produce gas and no serious effort was made to produce oil. We think these contentions are fully answered by the fact that the lease made no provision for any specific term in which the product of the well should be sold or in any manner utilized after it was discovered. Appellants neither alleged nor proved any dilatory tactics nor was it shown that appellees were in any manner negligent in the matter of utilizing and marketing the product of the well.

The record shows that gas was discovered in the well at a depth of 3170 feet but drilling operations continued until it reached a depth of 3408 feet. No oil having been discovered, the well was plugged back to the gas horizon of 3170 feet and there completed as a gas well. Appellants' witness, G. B. Turner, testified, he was District Superintendent of appellee Phillips Petroleum Company. He said that the well was drilled primarily as a gas well but as a test for oil and that when the depth of 3408 feet was reached it was reported that water was in the hole and, there being no showing of oil, the well was plugged back to protect the gas formation. The lease provided that the land was being leased for the development of oil or gas and that, if either should be found, certain royalties should be paid to the owner of the land and the rights of the lessee should continue as long as either oil or gas was produced from the land. There

is no indication that the production of oil was considered as primary to the production of gas and the record does not disclose any dereliction of duty on the part of appellee in this respect. It was shown that other wells located within the general vicinity but several miles distant from this one were producing oil but, at most, that fact could be considered only as a suggestion that oil may be present in the land covered by the lease here involved.

■ In so far as appellees may have failed promptly to market and utilize the product of the well or to prosecute further operations for the development of oil are concerned, being absent from the specific provisions of the lease, they could be considered only as implied covenants the violation of which gives rise to an action for damages. It has many times been held by the courts that, in oil and gas leases containing specific conditions of forfeiture, or termination, a forfeiture can not be maintained upon any ground other than those specified. It is also held, and is now a rule of law well established, that if implied covenants fully and with reasonable diligence to develop the land are breached, such breach will not give rise to an equitable suit for forfeiture or cancellation. Jacobs v. Robinson, Tex. Civ.App., 241 S.W. 241; Grubb v. McAfee, 109 Tex. 527, 212 S.W. 464; Cheek v. Metzer, 116 Tex. 356, 291 S.W. 860; Cole Pet. Co. v. United States Gas & Oil Co., 121 Tex. 59, 41 S.W.2d 414, 86 A.L.R. 719.

■ Moreover, in our opinion, appellants failed to establish these contentions as a matter of fact. Their witness, Turner, testified that gas in quantity of more than thirty-nine million feet per day was discovered at a depth of 3170 feet, yet drilling continued until a total depth of 3408 feet was reached. He said that the well was drilled as a gas well, but testing for oil, and that, when it was reported that water was in the hole, and no oil had been discovered, the well was plugged back to the gas horizon to protect the gas formation. Appellants alleged in their petition that gas in paying quantities was discovered in the well and, although the witness did not so state, we think it but reasonable to assume the drilling that was done after the gas formation was encountered was for the purpose of testing and exploring for oil.

We do not agree with appellants in these contentions and the assignments of error in respect to them are overruled.

■■ The next contention made by appellants is that no oil or gas was produced from the leased land within the primary term of ten years provided by the lease and no operations for drilling and prospecting for oil or gas were commenced within that period. They contend, therefore, that the lease expired at midnight of November 4, 1936, and no operations or efforts made by appellee after that time would revive it. This contention raises the controlling question in the case. Appellants having filed the suit to cancel the apparent interest held by appellees in the land, the burden rested upon them to prove facts under which the court would be warranted in rendering judgment in their favor. The lease provided that if, at the expiration of the primary term, oil or gas was not then being produced but the lessee was then engaged in drilling or re-working operations thereon, the lease should remain in force so long as operations should be prosecuted with no cessation of more than thirty consecutive days and, if they resulted in the production of oil or gas, so long thereafter as oil or gas should be produced from the land. Appellees alleged that on October 30, 1936, the Phillips Petroleum Company, for the purpose, and in good faith, of exploring the property for oil and gas, entered upon the land and made a location for a well; that the next day, at considerable cost, it placed upon the ground at the well location material for a steel tower and a large amount of other material, including a considerable quantity of cement and pipe, to be used in the erection of the derrick and drilling the well; that it dug a slush pit and a well for water and proceeded with all reasonable diligence to make preparation for the drilling of the oil well. Appellees offered no testimony but J. A. Box, from whom appellants purchased the land, testified that on the morning of November 5th, which was the day following the last day of the primary term of the lease, he went to the premises and out to where the location for the well had been made. He said there was material for the erection of the derrick, some pipe and a machine for drilling the water well located at the site but there was no machine or rig for drilling an oil well. He said several men were at work there and the first section of the steel derrick had been erected and they were working on the second section; that the water well was being worked on and one joint of the casing set for beginning the oil or gas well test. This was the only testimony introduced by either side with reference to what had been done by appellee in the way of preparation for drilling the oil well. Obviously, this evidence did not prove appellee Phillips Petroleum Company had not begun preparations for drilling the oil well prior to midnight November 4, 1936, when the lease otherwise would have expired. Appellants contend, however, that inasmuch as no oil or gas was actually being produced from the land on November 4, 1936, when the lease by its terms expired, the extension clause required that appellee be actually drilling in the ground in order to avail itself of the provisions of the lease in respect to an extension of its rights beyond that time. We are thus brought to the necessity of construing the terms of the fifth clause of the lease. It is to the effect that if, at the expiration of the primary term, oil or gas is not being produced but the lessee is then engaged in drilling or re-working operations thereon, the lease shall remain in force. In the case of Forney v. Ward, 25 Tex.Civ.App. 443, 62 S.W. 108, the Galveston Court of Civil Appeals held that the hauling of a load of lumber upon the premises on the day before the lease expired was not sufficient under the testimony in that case to constitute the commencement of operations for the drilling of a well and affirmed the judgment of the trial court canceling the lease. The Court of Civil Appeals of the Second District in a later case, however, declined to follow the holding and held that the timbers for the erection of the derrick having been placed upon the ground before the expiration of the lease and the lessee having thereafter put machinery in place and prosecuted the work of preparing to drill and of drilling the well with reasonable diligence, constituted "commencement to drill" the well within the time specified in the lease. Terry et al. v. Texas Co., Tex.Civ.App., 228 S.W. 1019. Similar provisions of an oil and gas lease were involved in the case of McCallister et al. v. Texas Co., Tex.Civ.App., 223 S.W. 859. The lease was dated August 19, 1911, and

provided that, under penalty of forfeiture of the rights and estates granted, operations for the drilling of a well for oil or gas should be begun within two years from the date of the lease. It was provided, however, that the lease may be extended without drilling operations by the payment of rentals but in no event should the term exceed seven years. Thus, the primary term of the lease would expire on the 19th of August, 1918. The proof showed that the rentals stipulated in the lease were paid for the seven year period and also that on July 13, 1918, a little more than one month prior to the expiration of the seven year period, the lessee began operations for the drilling of a well consisting of the selection and location of a place at which to drill, hauling derrick timbers to the site and providing a water supply for drilling purposes. It was shown that such operations were continued with diligence until the actual drilling of the well was begun on September 14, 1918, which was almost a month after the lease, by its terms, had expired. The court held that the acts done and performed by the lessee within the seven year period constituted a beginning of operations for the drilling of a well for oil within the meaning of the lease.

The evidence in the instant case shows that the work of drilling the well did not cease at any time but was continued without intermission until gas was produced. Appellants allege in their pleading that the gas produced was in paying quantities. The well was completed on the 18th of December, 1936. Appellants not having shown by any testimony whatever that the operations for the drilling of the well were not commenced prior to midnight of November 4, 1936, and the testimony of their own witness showing that such operations were continued with reasonable diligence until gas in paying quantities was produced from the well, the trial court would not have been warranted in decreeing to them the relief for which they prayed. They failed to discharge the burden which they assumed in their pleadings and were, therefore, not entitled to can-

cellation of the lease. Terry et al. v. Texas Co., Tex.Civ.App., 228 S.W. 1019; Clutter v. Wisconsin Texas Oil Co. et al., Tex.Civ.App., 233 S.W. 322; McCallister et al. v. Texas Co., Tex.Civ.App., 223 S.W. 859; Texas Co. v. Curry et al., Tex.Civ. App., 229 S.W. 643; Heard v. Pratt et al., Tex.Civ.App., 257 S.W. 660; Humphrys v. Skelly Oil Co., 5 Cir., 83 F.2d 989.

Under other assignments of error appellants make the contention that, upon a motion for judgment by appellees, the court was required to take as true every fact in evidence and to draw all reasonable inferences favorable to appellants. There is nothing in the record to show the trial court failed to do this. The evidence to the effect that oil had been discovered in the general vicinity of the lease here involved; that appellees failed to produce cuttings from the well after demands from appellants that they be produced; the execution of assignments of other oil leases in the vicinity by appellees in which they reserved the oil rights beyond certain depths; that the well that was drilled contained sands similar to others drilled in the vicinity from which oil was produced, and other proof of similar matters could not be considered as more than suggestions or indications of the presence of oil in the lease here involved. There being no showing that oil in paying quantities was discovered in the well nor any lack of diligence on the part of appellees to produce oil, these matters were not of such probative force as to require the conclusion that appellees had been guilty of such dereliction of duty as to warrant the cancellation of the lease. As we have stated, the suit had for its purpose the cancellation of the lease and appellants failed to present evidence sufficient to warrant such relief.

We have carefully examined all of the assignments of error and contentions made by appellants and, being of the opinion that no error is revealed by any of them, the judgment of the court below will be affirmed.